Chief Magistrate Judge Mary Alice Theiler

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

JAN 27 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY WESTERN DISTRICT OF WASHINGTON
                                    DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>RICHARD ALAN DYSON,<br>Defendant. | NO. MJ 15-027<br><br>COMPLAINT FOR VIOLATION<br><br>Title 18, United States Code,<br>Sections 641 and 1028A |

BEFORE MARY ALICE THEILER, Chief United States Magistrate Judge, U. S. District Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
*(Felony Theft of Public Funds)*

On or about July 3, 2014, at Kent, within the Western District of Washington, the defendant, RICHARD ALAN DYSON, did willfully and knowingly steal and convert to his own use money of the United States, to wit, approximately $1,728 in Social Security benefit payments to which he was not entitled.

All in violation of Title 18, United States Code, Section 641.

COMPLAINT / DYSON - 1

## COUNT 2
### *(Aggravated Identity Theft)*

On or about July 11, 2014, at Kent, within the Western District of Washington, RICHARD ALAN DYSON knowingly possessed and used, without lawful authority, a means of identification of another person, to wit, the name, date of birth, and Social Security number of S.W., a real person, during and in relation to a felony listed in Title 18, United States Code, Section 1028A(c), to wit, Theft of Public Funds in violation of Title 18, United States Code, Section 641.

All in violation of Title 18, United States Code, Section 1028A.

The undersigned complainant, Todd Salter, being first duly sworn on oath, deposes and says:

### INTRODUCTION

1. I have been employed as a law enforcement officer since July 1999. From 1999 through 2002, I was employed as a Trooper with the Washington State Patrol. In December 2002, I transferred to the King County Sheriff's Office. I worked patrol in two different Precinct areas and was assigned as a detective in the SeaTac Criminal Investigations Unit in January of 2006. In SeaTac, I was responsible for investigating all types of property crimes, domestic violence cases, drug cases, assaults and some robberies. In January 2009, I transferred to the Major Crimes Unit. In Major Crimes, I was tasked with investigating homicides, kidnappings, serious assaults and robberies. In March 2012, I became a Special Agent with the Social Security Administration, Office of the Inspector General ("SSA/OIG"). In my current position, I am tasked with investigating federal crimes relating to the Social Security Administration ("SSA"). This includes, but is not limited to, Social Security Program Fraud, Identity Theft, Misuse of the Social Security Number, Bank Fraud and Wire Fraud.

2. My training as a member of the Washington State Patrol, the King County Sheriff's Office and the Social Security Administration has included attending and

1  successfully completing a large number of schools and seminars, including but not
2  limited to; The Washington State Patrol Trooper's Academy, The Federal Law
3  Enforcement Training Center Criminal Investigator Training Program, Homicide
4  Investigation, Crime Scene Investigation, Interview and Interrogation, Bloodstain Pattern
5  Analysis, Field Training Officer School, Collision Investigation, and the annual Violent
6  Crimes Conference.

7      3.     The facts set forth in this affidavit are based on the following: my own
8  personal knowledge; knowledge obtained from other individuals during my participation
9  in this investigation, including other law enforcement officers; interviews of witnesses;
10 my review of records related to this investigation; communications with others who have
11 knowledge of the events and circumstances described herein; and information gained
12 through my training and experience. Because this affidavit is submitted for the limited
13 purpose of establishing probable cause, it does not set forth each and every fact that I or
14 others have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

16     4.     Based on my investigation, I believe Richard DYSON has been collecting
17 SSA disability benefits under his own name, while at the same time working under and
18 collecting unemployment insurance under the stolen identity of S. W., a resident of
19 Colorado. This belief is based on, among other things, employment records I have
20 located using the date of birth and social security number of S.W., but photo
21 identification showing DYSON and contact information for DYSON.

### Details of the Investigation

25     5.     According to records reviewed from the Washington Department of
26 Licensing ("DOL"), Richard A. DYSON, DOB: 10/24/53, SSN: XXX-XX-6697
27 currently lives at 25441 104th Ave SE, Unit # 4 in Kent, WA 98030. A check of the SSA
28 database showed that Richard DYSON is currently receiving Social Security disability

benefits in the monthly amount of $1,757.40. DYSON applied for benefits on November 15, 1992, due to mental disability, and has been receiving them ever since.

6. Based on my review of records maintained by the Colorado Department of Revenue/Division of Motor Vehicles, an individual identified as S.W., DOB: XX/XX/56, currently lives in Aurora, CO. S.W. was issued Social Security Number XXX-XX-2281.

7. According to an in-person interview with S.W. conducted by SA Joe Joyce, SSA/OIG Denver Field Division, on January 7, 2015, S.W. has spent much of his adult life living on the streets in various cities throughout the United States. S.W. has not worked for most of his adult life, with the exception of short-term temporary jobs. Sometime between the late 1990s and the early 2000s, S.W. travelled to the State of Washington via freight train from Tucson, AZ.

8. During his time in Seattle, S.W. recalls working for one day for "Labor Ready," a day-laborer company. S.W. recalled cleaning up after a football game in the Seattle Seahawks stadium, which makes him think he was in the area in late summer or fall. S.W. only recalled working that one day during his brief stay in Seattle.

9. At some point during his stay in Seattle, S.W. lost a wallet containing his photographic identification from Arizona, his social security card, and his birth certificate.

10. S.W. returned to Tucson, AZ after his stay in Seattle then re-located to Denver, Colorado. S.W. has lived in and around Denver and Aurora, CO from the early 2000s to present, and has spent the large majority of that time residing on the streets. S.W. has lived at his present address in Aurora, CO for almost a year.

11. On November 7, 2013, S.W. applied for SSA Supplemental Security Income ("SSI") Disability benefits. According to S.W., he was denied SSA/SSI benefits because his records reflected excessive hours and work earnings. A review of SSA records indicated S.W. did apply for SSI, but was denied benefits for lack of documentation.

12. On July 31, 2014, the Washington State Employment Security Department ("WSESD") received a referral from S.W. and Michele Pacheco-Espinoza, S.W.'s case worker with the Aurora (Colorado) Mental Health Center. The referral alleged that someone else was working under S.W.'s SSN in the Seattle area.

13. The WSESD assigned the investigation to Investigator Alma Neuert. Investigator Neuert determined the following:

14. Investigator Neuert searched the phone number listed on the unemployment claims in the WSESD file allegedly submitted by S.W.: (XXX) XXX-8186. The search results identified Richard Alan DYSON as the user of that number.

15. Investigator Neuert generated a document using DYSON's photograph taken from his Washington State Driver's License issued in his name. The document included the following language: "The person pictured below may be an employee of yours. Please look at this picture and tell us if this person is S[.]W[.] and if he/she works or has worked for you as reported on your quarterly tax records." Investigator Neuert sent the form to two employers who had previously identified S.W. as an employee in their quarterly submittals, F.D. Thomas Inc. and Appalachian Pipeline Contractors, LLP.

16. Both F.D. Thomas Inc. and Appalachian Pipeline Contractors, LLP confirmed with Investigator Neuert that the person pictured on the document (DYSON) was the employee they hired and knew as S.W. Both companies sent Investigator Neuert copies of personnel documents they had on file for S.W. Those documents indicate the person they believed to be S.W., but had been photographically identified as DYSON, had presented a Pennsylvania driver's license, bearing the name of S.W. with a DOB of XX/XX/56 (matching S.W.'s actual DOB).

17. According to Investigator Neuert, the documentation in the unemployment file for S.W., which she reviewed on August 22, 2014, revealed similar handwriting styles when compared to the Notice of Claim for a corporation which reported wages for S.W., Washington Charitable Professional Services. This document was signed by the president of the corporation, Richard DYSON.

18. On August 22, 2014, Investigator Neuert sent a letter to Washington Charitable Professional Service Corporation regarding an investigation involving their employee, S.W.

19. On August 29, 2014, Investigator Neuert received a letter from Richard DYSON in response to her letter. The letter read, in part, as follows:

> "The first letter sent, it referred to a possibility of that the charity would be responsible for some kind of unemployment money owed. I have not been able to contact S[.] W[.] because he doesn't answer his phone, he's just disappeared as far as I'm concerned.
> So, after reflecting and contemplation, the charity is amicable towards making anything that S[.]W[.] has done whether thru neglect and/or intentionally...the charity is willing to make things right by offering one hundred dollars a month or more if possible depending concerning when the charity can afford more to make things right. The charity sincerely wishes to make things right and put this unfortunate set of circumstances behind it concerning this individual and to have a clean slate without a cloud over it.
> Please contact the charity by letter for confirmation of this letter, to what if any monies owed and if we can come to agreement to correct a wrong if there is one.
> Sincerely,
> Richard Dyson
> Washington Charitable Professional Services Corporation
> 25441 104th Avenue S.E., #4
> Kent, Washington 98030"

20. Based upon the above information, Investigator Neuert contacted me on September 30, 2014, to refer this investigation. The referral alleged that Richard DYSON was using a second identity to work and collect Unemployment Insurance (UI) benefits.

21. According to Investigator Neuert, from June 2005 to June 2014, Richard DYSON used the identity and social security number belonging to S.W. to work in Washington State and collect unemployment benefits. As a result of this scheme, DYSON fraudulently obtained approximately $44,647.00 in unemployment benefits to which he was not entitled.

22. In addition, a review of WSESD records disclosed that S.W. had reported wages dating back to 1999. Investigator Neuert provided me with documentation referencing the reported wage history of S.W.

23. Based upon the above information, I contacted the Kent SSA Office and spoke with Case Representative ("CR") Ginger Johnson. I provided her with a brief overview of the case and sent her all of the wages received from WSESD for S.W. CR Johnson conducted a preliminary work review and determined that DYSON received approximately $201,034 in SSA disability benefits between 2001 and the present that he would not have otherwise been entitled to, if the wages fraudulently reported as being earned by S.W. had actually been reported as DYSON's.

24. On December 17, 2014, I reviewed WSESD UI benefit checks issued to S.W. Several of the negotiated checks were stamped on the back of the check indicating they were cashed at Money Tree stores. Markings on additional negotiated checks suggested they had been cashed at Bank of America branches. I was subsequently informed by a Bank of America investigator that Money Tree uses Bank of America banking services. Working with the investigator, I determined that codes on the negotiated checks disclosed the locations of the Money Tree stores at which the checks were presented and cashed. One of the store location codes on the subject checks corresponded to a store located in Kent, WA. I performed an internet search and found a Money Tree store located at 25620 104th Ave SE in Kent, WA. This store is located almost directly across the street from DYSON's address, as listed on his Washington State driver's license.

25. On December 17, 2014, I visited the Money Tree store located at 25620 104th Ave SE in Kent, WA and spoke to the manager, Richard Chatta. Chatta told me the store had an active account under the name S.W. with a DOB of XX/XX/56. Chatta said the account was opened in 2007 at the Money Tree store in Covington, Washington. Chatta confirmed that the store locational code for the Kent location was the same code found on some of the WSESD benefits checks. According to Chatta, store records

indicated S.W. made 82 visits or transactions with Money Tree since opening up his account. Chatta said the records indicate S.W. made his last visit to the Kent store on October 3, 2014. At that time, S.W. cashed a check from Mid Mountain Field in the amount of $808.49. Finally, Chatta provided an address for the Money Tree store in Covington, 17307 SE 272nd St.

26. On December 18, 2014, I visited the Money Tree store in Covington and spoke with an employee, Sarin Soeun. Soeun confirmed that the store had an active account under S.W.'s name and it had been opened on December 27, 2007. Soeun provided me with the initial account application completed by S.W., together with a photographic identification card purporting to be S.W. The application identifies the account holder as S.W. with a date of birth of XX/XX/56, a SSN of XXX-XX-2281 (S.W.'s true date of birth and SSN), and a cell phone number matching one previously identified as the same number issued to DYSON. The identification card appears to depict DYSON. The card is issued in the name of S.W. and lists the SSN XXX-XX-2281.

27. On December 17, 2014, I attempted to locate DYSON's residence at 25441 104th Ave SE, Unit # 4 in Kent, WA. Upon arrival at the listed address, I identified a large commercial business, Super Sew and Vac. I entered the business and contacted the owner, Bob Langdon. Langdon told me he owned the building which included several apartment units on the second floor of the business.

28. I asked Langdon if he had a tenant by the name Richard DYSON. He confirmed DYSON has lived in an apartment above the business since October 2004. I showed Langdon a DOL photo of DYSON and he confirmed DYSON resided in Unit #4. Langdon said DYSON paid his rent in cash every month. Langdon told me DYSON came to him a few months ago and asked him if DYSON could give him some of his possessions, mainly gold. When asked to explain the request, Langdon said DYSON told him that he (DYSON) was likely going away to jail for a while. Langdon declined DYSON's offer.

1  29. I asked Langdon if DYSON worked. He told me DYSON receives Social
2  Security benefits, but he also thought he may be working. Langdon said he routinely sees
3  what he described as "flagging gear" in DYSON's car. Langdon reported seeing
4  reflective work gear and boots in DYSON's car.
5  30. On December 18, 2014, I visited Mid Mountain Contractor's located at 825
6  5th Avenue in Kirkland, Washington and spoke with Vice President Greg Covinger and
7  Human Resources manager Heidi Weber. Weber confirmed that a person they knew as
8  S.W. worked for Mid Mountain from October 3, 2014 through October 12, 2014. Weber
9  said S.W. belongs to the laborers union and works as a flagger. Weber said she doesn't
10 know S.W., but she did find the W-4 form he completed along with additional company
11 personnel documents. The W-4 form completed by S.W. bears the SSN XXX-XX-2281
12 (S.W.'s true SSN). It also bears the same address as the employment paperwork from
13 F.D Thomas Inc. and Appalachian Pipeline Contractors, LLP., namely 31108 3rd Ave
14 TRLR # 225 in Black Diamond, WA. Finally, Weber told me she believed the person
15 she knew as S.W. was currently working for Lakeside Industries.
16  31. On December 18, 2014, I visited Lakeside Industries located at 6505 226th
17 Place SE in Issaquah, Washington Tana Blair, Lakeside's Human Resources manager.
18 Blair told me Lakeside had formerly employed an individual they identified as S.W. but
19 he was terminated on July 28, 2014 for refusing work. Blair stated that S.W. was a union
20 flagger from the local union hall. Blair provided several documents from S.W.'s
21 personnel file, including a copy of the same Pennsylvania driver's license previously
22 provided to WSESD, a Social Security card bearing number XXX-XX-2281, and a
23 Traffic Control Certified Flagger photographic identification card. All of the items were
24 in the name S.W. The person depicted on the Flagger card was Richard DYSON. Blair
25 also provided me with copies of an I-9 form and a Washington State Driving Record
26 Request form completed by S.W. on July 11, 2014. Both forms were signed under
27 penalty of perjury. The phone number listed on both forms was the same number
28 previously attributed to DYSON.

## **CONCLUSION**

32. Based on the foregoing, I believe there is probable cause to believe that RICHARD ALAN DYSON committed the offenses charged in this Complaint.

TODD SALTER, Complainant
Special Agent, Social Security
Administration
Office of Inspector General

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

Dated this 27 day of January, 2015.

MARY ALICE THEILER
Chief United States Magistrate Judge